UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BRUCE CAMERON DAVIDSON,

                            Plaintiff,

   -against-

925 LLC,

                            Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __1/6/2025__

No. 23-cv-09891-NSR
**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

    Plaintiff Bruce Cameron Davidson ("Plaintiff" or "Davidson") initiated this action[1] against Defendant 925 LLC ("925" or "Defendant") on November 8, 2023, seeking redress for one count of copyright infringement in violation of his exclusive rights over his photograph under the Copyright Act, 17 U.S.C. §106 and one count of the removal of copyright management information ("CMI") in violation of 17 U.S.C. § 1202(b), Digital Millennium Copyright Act ("DMCA").

    Presently before the Court is 925's motion to dismiss all claims in Plaintiff's First Amended Complaint ("FAC," ECF No. 22) in its entirety pursuant to Fed. R. Civ. P. 12(b)(6). For the following reasons, Defendant's motion to dismiss is DENIED.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

    For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the FAC and draws all reasonable inferences in Plaintiff's favor, as summarized below.

---

[1] Initial complaint was filed on November 8, 2023 and First Amended Complaint was filed on February 6, 2024.

1

Davidson is a professional photographer who shoots aerial photographs. (FAC ¶ 2.) Davidson has been published in over thirty publications, has photographed campaigns for numerous brands, and won various awards. (*Id.*)

925 was established in 2007 and the company has grown to include five websites covering different tech verticals: 9to5Mac, 9to5Google, 9to5toys, Electrek.co, and DroneDJ. (*Id.* ¶ 3.) The sites see close to three million pageviews per day. (*Id.*) At all times relevant, 925 owned and operated the internet website located at the URL https://9to5mac.com/ (the "Website"). (*Id.*)

Plaintiff regularly takes photographs and registers them under group registrations comprised of multiple photographs. (Pl. Decl. ¶ 6, ECF 22-1.) Plaintiff regularly posts these images with CMI shown on the photograph as: "© Cameron Davidson." (*Id.* ¶ 7.) In 2018, Plaintiff created the photograph at issue entitled "MM8746_180921_4510," which is referred to as the "Work." Davidson registered the Work with the Register of Copyrights on February 23, 2019, as part of a group registration titled "Silicon Valley– NatGeo – 1-7446859471." (FAC ¶ 11.) The group registration was assigned registration number VAu-1-364-773. (*Id.*) The Certificate of Registration is attached to the FAC as Exhibit 1. (*Id.*)

The Work is a night-time aerial shot of the Apple, Inc. headquarters in Silicon Valley, California. Davidson displayed the Work on his professional website at https://www.aerialstock.com/-/galleries/silicon-valley-headquarters/apple/-/medias/f525ab24-6bd5-4190-b279-78eddf370355-apple-park-cupertino-california ("the BCD Website"). (*Id.* ¶ 12.) At the time he displayed the Work on the BCD Website Davidson also included information regarding the proper usage and licensing rights protocol through the "License Images" and "Terms of Use" links on the BCD Website. (*Id.*) Davidson's display of the Work on the BCD Website also included CMI in the form of digitally embedded metadata, various copyright notices as well as

visible and invisible watermarks (collectively, the "Attributions"). (*Id.* ¶ 13.) A screenshot of the Work on Plaintiff's website showing Plaintiff's CMI is attached to the FAC as Exhibit 2. (*Id.*)

Davidson created the Work for the purpose of editorial commentary on Silicon Valley, and for licensing to news and media organizations, such as National Geographic. (*Id.* ¶ 14.) Davidson asserts that the Work is protected by copyright. (*Id.* ¶ 15.) The FAC avers that the Work is entirely original, distinctive, and unique in perspective, orientation, positioning, lighting, and other details. (*Id.*) As such, the FAC asserts that the Work qualifies as subject matter protectable under the Copyright Act. (*Id.*) To capture the Work, Plaintiff used drones and his distinct photography skills to set up the shot and capture the specific lighting and angle. (Pl. Decl. ¶ 13–15, ECF 22-1.) At all relevant times Davidson was the owner of the copyrighted Work. (FAC ¶ 15.)

The FAC alleges that Defendant copied Plaintiff's copyrighted Work from the internet in order to advertise, market and promote its business activities. (*Id.* ¶ 4.) Plaintiff asserts that 925 has never been licensed to use the Work for any purpose nor has Plaintiff ever given Defendant permission or authority to copy, distribute or display the Work. (*Id.* ¶¶ 17, 24.) Plaintiff avers that when 925 copied and displayed the Work, 925 also removed Plaintiff's CMI from the Work. (*Id.* ¶ 26.) Plaintiff never gave 925 permission or authority to remove CMI from the Work. (*Id.* ¶ 27.) On or about November 23, 2022, Davidson discovered the unauthorized use of his Work on the Website at the URL https://9to5mac.com/2020/09/02/developers-highlight-moreanomalies-in-apples-30-cut/. (*Id.* ¶ 19.)

Plaintiff alleges that 925 copied and distributed Davidson's copyrighted Work in connection with Defendant's business for purposes of advertising and promoting Defendant's business, and in the course and scope of advertising and selling products and services. (*Id.* ¶ 22.)

Plaintiff further alleges that 925 used the Work for the exact purpose for which Plaintiff initially created the Work and to attract consumers to Defendant's website. (*Id.*)

On December 16, 2022, Davidson notified 925 of the allegations set forth in the Complaint and 925 responded via email on the same day to inform Plaintiff that that the image had been deleted from their server. (*Id.* ¶ 25.)

Plaintiff commenced action on November 8, 2023 by filing his Complaint. (ECF No. 1.) Plaintiff filed a First FAC on February 6, 2024. (ECF No. 16.) On May 9, 2024, Defendant filed a motion to dismiss and a corresponding memorandum in support (ECF No. 20, "Def. Mem."), Plaintiff filed a memorandum in opposition to Defendant's Motion to Dismiss (ECF No. 22, "Pl. Opp.") along with a declaration (ECF No. 22-1, Pl. Decl.), and Defendant filed a reply (ECF No. 21, "Def. Reply".)

## LEGAL STANDARD

*Federal Rule of Civil Procedure 12(b)(6)*

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). The Second Circuit "deem[s] a complaint to include any written instrument attached to it

4

as an exhibit or any statements or documents incorporated in it by reference ... and documents that plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rotham v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (internal citations omitted). The critical inquiry is whether the Plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A motion to dismiss will be denied where the allegations "allow[ ] the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

*Federal Rule of Civil Procedure Rule 8(a)(2)*

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." In this Circuit, to meet the pleading requirements under Rule 8 in cases involving copyright infringement, plaintiffs have consistently been required to allege the four-prong standard set forth in *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 36, n.3 (S.D.N.Y. 1992). *See Palmer/Kane LLC v. Benchmark Educ. Co. LLC*, No. 18-CV-9369 (NSR), 2020 WL 85469 (S.D.N.Y. Jan. 6, 2020); *Jacobs v. Carnival Corp.*, No. 06 CIV. 0606 (DAB), 2009 WL 856637 (S.D.N.Y. Mar. 25, 2009). Under *Kelly*, the complaint must allege: '(1) which specific original works are the subject of the copyright claim, (2) that plaintiff owns the copyrights in those works, (3) that the copyrights have been registered in accordance with the statute, and (4) by what acts during what time the defendant infringed the copyright.'" *Jose Luis Pelaez, Inc. v. McGraw-Hill Glob. Educ. Holdings LLC*, No. 16-CV-5393 (KMW), 2017 WL 3432303, at *2 (S.D.N.Y. Aug. 9, 2017) (quoting *Kelly*, 145 F.R.D. at 36, aff'd, 23 F.3d 398 (2d Cir. 1994), cert. denied, 513 U.S. 950 (1994)).

5

## I.     Count One: Copyright Infringement

Defendant argues that Plaintiff failed to state of claim of copyright infringement for the Work because the Work does not constitute an "original" work of authorship and that it is unclear if the Work's copyright has been registered in accordance with the statute. (Def. Mem. p. 2– 3.) The Court disagrees.

First, to withstand a motion to dismiss, a complaint based on copyright infringement must allege: "(1) which original works are the subject of the copyright claim; (2) that the plaintiff owns the copyrights in those works; (3) that the copyrights have been registered in accordance with the statute; and (4) by what acts and during what time the defendant infringed the copyright." *Patterson v. Diggs*, No. 18-CV-03142 (NSR), 2019 WL 3996493, at *3 (S.D.N.Y. Aug. 23, 2019) (quoting *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 35 (S.D.N.Y.1992)). Plaintiff's FAC sufficiently pleads copyright infringement and Defendant's motion to deny Plaintiff's first count is denied.

### 1.     The Work Constitutes as an "Original" Work

Of the issues before us, the first concerns the originality of the Work. Defendant argues that "[a] work is original if it was independently created by the author and possesses at least some minimal degree of creativity." (Def. Mem., p. 4.) (quoting *Oriental Art Printing Inc. v. GS Printing Corp.*, 34 F. App'x 401 (2d Cir. 2002)). Defendant adds that Plaintiff's Work lacks "the creative or expressive elements that would render them original works," and instead should be considered "merely a "direct depiction[]" of Apple Inc.'s headquarters at night. . . rather than to be an expression of creativity." (Def. Mem., p. 4.) As a result, Defendant argues that the photograph at issue is not entitled to protection under the Copyright Act. Defendant's reliance on the principles in *Oriental Art Printing* is misplaced.

The term "original" means that "the work was independently created by the author, rather than copied from other works, and that it possesses a modicum of creativity." *Wozniak v. Warner Bros. Ent. Inc.*, 726 F. Supp. 3d 213, 237 (S.D.N.Y. 2024) (quoting *Earth Flag Ltd. v. Alamo Flag Co.*, 153 F. Supp. 2d 349, 353 (S.D.N.Y. 2001)). Although the threshold for originality is low, a work must possess more than a *de minimis* quantum of creativity. *Earth Flag* at 353 (S.D.N.Y. 2001).

Caselaw in this Circuit supports the proposition that the unique factors that photographers consider and utilize to capture photographs renders them original works of art. *Rogers v. Koons*, 960 F.2d 301, 307 (2d Cir. 1992) ("Elements of originality in a photograph may include posing the subjects, lighting, angle, selection of film and camera, evoking the desired expression, and almost any other variant involved."); *Gross v. Seligman*, 212 F. 930, 931 (2d Cir.1914) ("exercise of artistic talent" reflected in "pose, light, and shade, etc."); *Mannion v. Coors Brewing Co.*, 377 F. Supp. 2d 444, 451 (S.D.N.Y. 2005) (collecting cases); *SHL Imaging, Inc. v. Artisan House, Inc.*, 117 F.Supp.2d 301, 311 (S.D.N.Y.2000) ("What makes plaintiff's photographs original is the totality of the precise lighting selection, angle of the camera, lens and filter selection."); *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 992 F.3d 99, 118 (2d Cir.), *opinion withdrawn and superseded on reh'g sub nom. Andy Warhol Found. for Visual Arts, Inc. v. Goldsmith*, 11 F.4th 26 (2d Cir. 2021), *aff'd sub nom. Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 143 S. Ct. 1258, 215 L. Ed. 2d 473 (2023) ("As applied to photographs, [copyright] protection encompasses the photographer's "posing the subjects, lighting, angle, selection of film and camera, evoking the desired expression, and almost any other variant involved." The cumulative manifestation of these artistic choices – and what the law ultimately protects – is the image produced in the interval between the shutter opening and closing, *i.e.*, the

photograph itself.") (quoting *Leibovitz v. Paramount Pictures Corp.*, 137 F.3d 109, 116 (2d Cir. 1998)).

Here, the Work meets these requirements. Plaintiff used drones and his distinct photography skills to conceptualize, plan, and capture the specific lighting and angle of the Apple headquarters on that specific day and time. (Pl. Decl. ¶ 13–15.) The FAC states that the Work is entirely original, distinctive, and unique in perspective, orientation, positioning, lighting, and other details. (FAC ¶ 15.) Defendant further argues that Plaintiff's photograph serves a utilitarian purpose of depicting Apple Inc.'s headquarters at night rather than expressing creativity. However, "[a]lmost any photograph may claim the necessary originality to support a copyright," as long as there is some originality in "rendition ... timing ... [or] creation of the subject." *Mannion v. Coors Brewing Co.*, 377 F. Supp. 2d 444, 450, 452–55 (S.D.N.Y. 2005). Moreover, even if a nighttime picture of a public building is considered utilitarian "photographs of the same subject matter at the same time does not make [a photograph] less original; copyright protects an author's specific expression capturing a subject, even if others capture the subject as well." *O'Neil v. Ratajkowski*, 563 F. Supp. 3d 112, 125 (S.D.N.Y. 2021). Therefore, in terms of his unique expression of the subject matter captured in the photograph, Plaintiff has met the minimal requirements of originality under the Copyright Act.

### 2. Plaintiff Has Sufficiently Pled that the Work's Copyright Has Been Registered in Accordance with the Copyright Act

Next, Defendant argues that the group registration that includes the Work does not state on its face that it is a group registration and that "there is no way to know whether the photograph at issue in this action is part of the group registration." (Def. Mem, p. 3.) Defendant's arguments are premature. To determine whether a copyright infringement claim survives a motion to dismiss, the

Court must analyze the scope of the registrations identified in the complaint. *ID Tech LLC v. Toggle Web Media LLC*, No. 20-CV-5949(EK)(RER), 2023 WL 2613625, at *4 (E.D.N.Y. Mar. 23, 2023) ("Understanding the scope of the registrations starts, unsurprisingly, with the registrations themselves.") (quoting *Blue Book Servs., Inc. v. Farm J., Inc.*, 435 F. Supp. 3d 912, 917 (N.D. Ill. 2020)).

Defendant is correct in noting that Plaintiff's registrations do not indicate that the registration is that of a group registration. Further, the registration does not specify if the Work is part of the group registration on the Certificate of Registration. The title of the group registration includes references to both Silicon Valley, where the Apple headquarter is located, and NatGeo, the representative new/media organization to which Plaintiff expected to license the Work. For the purposes of the motion of dismiss stage, "when there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft* at 679. Here, Plaintiff avers in both the FAC and his declaration that he registered the Work with the Register of Copyrights on February 23, 2019, as part of a group registration titled "Silicon Valley– NatGeo – 1-7446859471." (FAC ¶ 11.) Moreover, Plaintiff alleges at all relevant times he was the owner of the copyrighted Work. (*Id.* ¶ 16.) Plaintiff provided the registration that he states is the corresponding registration of the Work. All facts taken as true, Plaintiff has sufficiently alleged that the Work is properly registered. As Plaintiff notes, Defendant can request the deposit copy during discovery. See *Iantosca v. Elie Tahari, Ltd.*, No. 19-CV-04527 (MKV), 2020 WL 5603538, at *4 (S.D.N.Y. Sept. 18, 2020) ("It is the Defendant's obligation, during discovery, to contact the USCO and request deposit copies to be used to rebut the validity of the copyright registration.") (quoting *Goodman v. Universal Beauty Prods. Inc.*, No. 17-CV-1716 (KBF), 2018 WL 1274855, at *5 (S.D.N.Y. Mar. 9, 2018)). During

discovery, Defendant can also search the group registration number (VAu-1-364-773) from the Certificate of Registration on the online Copyright Public Records System (CPRS) (accessible at https://publicrecords.copyright.gov), for example, and confirm that Davidson registered "Silicon Valley - NatGeo - 1-7446859471" on February 23, 2019 as a "Group of Unpublished Photographs," thus supporting the group registration allegation. (emphasis added). Plaintiff has sufficiently pled proper registration of the Work.

### B. Defendant's Fair Use Argument is Premature

Further, Defendant argues that even if the Work can be considered original and properly registered and entitled to federal copyright protection, 925's use of the image to accompany a news article constitutes a "fair use" of the image and therefore is not infringement of the copyright. However, this argument is premature at this stage of litigation. Under the Copyright Act, "the fair use of a copyrighted work, including such use by reproduction in copies or phonorecords or by any other means specified by that section, for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright." *Ferdman v. CBS Interactive Inc.*, 342 F. Supp. 3d 515, 530 (S.D.N.Y. 2018) (citing 17 U.S.C. § 107). As the words "such as" indicate, the listing is "illustrative and not limitative." 17 U.S.C. § 101; see *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. at 561, 105 S.Ct. 2218. Four nonexclusive factors—incorporating common law traditions—are properly considered in "determining whether the use made of a work in any particular case is a fair use." 17 U.S.C. § 107. (1) The purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as

10

a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work. *TCA Television Corp. v. McCollum*, 839 F.3d 168, 178–79 (2d Cir. 2016).

Courts in this Circuit have frequently held that given the fact-intensive nature of the statutory framework and the requisite analysis of the invocation of the fair use doctrine, resolution is not wholly appropriate at the motion to dismiss stage. *Kelly–Brown v. Winfrey,* 717 F.3d 295, 308 (2d Cir.2013) ("Because fair use is an affirmative defense, it often requires consideration of facts outside of the complaint and thus is inappropriate to resolve on a motion to dismiss."); *Cariou v. Prince*, 714 F.3d 694, 704–05 (2d Cir. 2013) ("The determination of fair use is a "mixed question of fact and law," which requires "an open-ended and context-sensitive inquiry.") (citations omitted); *A.V.E.L.A., Inc. v. Est. of Marilyn Monroe, LLC*, 131 F. Supp. 3d 196, 210 (S.D.N.Y. 2015) ("[T]he fair use doctrine necessarily raises questions of fact that cannot be resolved on a motion to dismiss.) The Court does not find that the Defendant's entitlement to a fair use defense is so clearly established on the face of the FAC and its incorporated exhibits as to support dismissal. Therefore, Defendant's motion to dismiss is denied as to Plaintiff's copyright infringement claim.

## II.     Count Two: Removal of CMI in Violation of the DMCA

Plaintiff properly states a claim under 17 U.S.C. §1202(b). The DMCA protects against the removal or alteration of "CMI, which is defined in part as identifying information about the author of a work "conveyed in connection with" the work. 17 U.S.C. § 1202(c). CMI includes the title of the work as well as the name, or other identifying information, of the author or copyright holder. (*Id.*) Specifically, the DMCA prohibits (1) the removal or alteration of CMI, (2) the distribution of CMI with missing or altered information, and (3) the distribution of works containing missing or altered CMI. 17 U.S.C. § 1202(b). *See Patterson v. Diggs* at 4. Plaintiff alleges that Defendant violated each of these prohibitions. Specifically, Plaintiff alleges that Defendant, knowingly and,

with the intent to enable or facilitate copyright infringement, displayed the Work on the Website without any of the Attributions; distributed the Work to Website knowing that the CMI had been removed; and altered the CMI without authority of the copyright owner or the law. (FAC ¶¶ 38-39.)

To make out a CMI removal or alteration claim under the DMCA, "[a] plaintiff must ... prove the following: (1) the existence of CMI in connection with a copyrighted work; and (2) that a defendant 'distribute[d] ... works [or] copies of works'; (3) while 'knowing that [CMI] has been removed or altered without authority of the copyright owner or the law'; and (4) while 'knowing, or ... having reasonable grounds to know' that such distribution 'will induce, enable, facilitate, or conceal an infringement.'" *We the Protesters, Inc. v. Sinyangwe*, 724 F. Supp. 3d 281, 295 (S.D.N.Y. 2024) (quoting *Mango v. BuzzFeed, Inc.*, 970 F.3d 167, 171 (2d Cir. 2020); 17 U.S.C. § 1202(b)).

Defendant contends that Plaintiff failed to adequately plead intent and knowledge for his claim for removal of CMI. The Court concludes that Plaintiff's factual support for Count Two in the Complaint is sufficient at this stage. Unlike the case Defendant cites in support of their argument, *Chevrestt v. Am. Media, Inc.*, 204 F. Supp. 3d 629, 632 (S.D.N.Y. 2016), the complaint does have factual allegations supporting inferences of intent and knowledge. Here, Plaintiff alleges that the display of the Work on the BCD Website—the source of the photograph—included CMI in the form of digitally embedded metadata, various copyright notices as well as visible and invisible watermarks. (FAC ¶ 13.) At the motion to dismiss stage, the Court must take the Plaintiff's allegations as true and draw all reasonable inferences in the Plaintiff's favor. *Ashcroft* at 679

Further, Plaintiff has done enough by alleging that Defendant removed the CMI from the Work by attaching as an exhibit to the Complaint a copy of the Work in which the Work has been

precisely cropped right above where the "© CAMERON DAVIDSON" watermark would appear. *See BanxCorp v. Costco Wholesale Corp.*, 723 F. Supp. 2d 596, 610 (S.D.N.Y. 2010) ("Providing an actual example of the allegedly infringing [work] is obviously more than a conclusory allegation."). Moreover, from the original and altered version of the Work, the Court can infer defendant's use and distribution of the Work included missing CMI. Determining defendant's role, if any, in the alteration and removal, or 'innocent use' is not appropriate at this time. The parties can provide evidentiary support regarding the alleged intentional misconduct during discovery and beyond. At this stage, the Court must draw all reasonable inferences in Plaintiff's favor, and it is at least as reasonable to infer that the CMI was altered to conceal or facilitate the alleged infringement. Therefore, the Court concludes that Plaintiff's allegations are sufficiently detailed to pass the 12(b)(6) threshold and Defendant's motion to dismiss is denied as to Plaintiff's CMI claim.

## CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's motion to dismiss in its entirety. Defendant is directed to file an answer or otherwise respond to the First Amended Complaint by January 27, 2025. The parties are further directed to meet and confer on or before February 27, 2025 and complete and file a Case Management Plan and Scheduling Order (blank form attached) by March 21, 2025. The Clerk of Court is kindly directed to terminate the motion at ECF No. 19.

SO ORDERED.

Dated: January 6, 2025
White Plains, New York

SO ORDERED:

NELSON S. ROMÁN
United States District Judge

SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

                            Plaintiff(s),

- against -

                            Defendant(s).

**CIVIL CASE DISCOVERY PLAN AND SCHEDULING ORDER**

_____ CV _____ (NSR)

---------------------------------------------------------------x

This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with counsel, pursuant to Fed. R. Civ. P. 16 and 26(f):

1. All parties [consent] [do not consent] to conducting all further proceedings before a Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c). The parties are free to withhold consent without adverse substantive consequences. (If all parties consent, the remaining paragraphs of this form need not be completed.)

2. This case [is] [is not] to be tried to a jury.

3. Joinder of additional parties must be accomplished by _____.

4. Amended pleadings may be filed until _____.

5. Interrogatories shall be served no later than _____, and responses thereto shall be served within thirty (30) days thereafter. The provisions of Local Civil Rule 33.3 [shall] [shall not] apply to this case.

6. First request for production of documents, if any, shall be served no later than _____.

7. Non-expert depositions shall be completed by _____.

      a.      Unless counsel agree otherwise or the Court so orders, depositions shall not be held until all parties have responded to any first requests for production of documents.

      b.      Depositions shall proceed concurrently.

      c.      Whenever possible, unless counsel agree otherwise or the Court so orders, non-party depositions shall follow party depositions.

8. Any further interrogatories, including expert interrogatories, shall be served no later than _____.

9. Requests to Admit, if any, shall be served no later than _____.

10. Expert reports shall be served no later than _____.

11. Rebuttal expert reports shall be served no later than _____.

12. Expert depositions shall be completed by _____.

13. Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

14. **ALL DISCOVERY SHALL BE COMPLETED BY** _____.

15. Any motions shall be filed in accordance with the Court's Individual Practices.

16. This Civil Case Discovery Plan and Scheduling Order may not be changed without leave of Court (or the assigned Magistrate Judge acting under a specific order of reference).

17. The Magistrate Judge assigned to this case is the Hon. _____.

18. If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.

19. The next case management conference is scheduled for _____, at _____.  (The Court will set this date at the initial conference.)

SO ORDERED.

Dated:   White Plains, New York
_____

_____
Nelson S. Román, U.S. District Judge